UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALRADA FINANCIAL CORPORATION, a Wyoming corporation; and DEPOSITION TECHNOLOGY LTD., a United Kingdom company and wholly owned subsidiary of Dalrada Financial Corp., <br><br>                                      Plaintiffs, <br><br>vs. <br><br>WILLIAM IAN MARTIN BONAR, as an individual and in his official capacity; and DOES 1–50, inclusive, <br><br>                                      Defendants. | Case No.: 24-cv-2166-WQH-BLM <br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Application for TRO"), filed by Plaintiffs Dalrada Financial Corporation ("Dalrada") and Deposition Technology, Ltd. (collectively, "Plaintiffs"). (ECF No. 50.)

**I.    Background**

On November 19, 2024, Plaintiffs initiated this action by filing a Complaint against Defendant William Ian Martin Bonar ("William Bonar") and others. (ECF No. 1.)

On December 30, 2024, all Defendants except William Bonar specially appeared to file Motions to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2). (ECF Nos. 6–9.) On July 16, 2025, the Court issued an Order dismissing the specially appearing Defendants for lack of personal jurisdiction. (ECF No. 29.)

On August 1, 2025, William Bonar filed an Answer to the Complaint. (ECF No. 36.)

On August 7, 2025, Plaintiffs filed a Motion for Leave to File a First Amended Complaint ("Motion to Amend"), seeking to add new allegations against William Bonar and the previously dismissed Defendants. (ECF No. 38.) On September 23, 2025, the Court issued an Order granting the Motion to Amend with respect to the new allegations against William Bonar and denying the Motion to Amend with respect to the new allegations against the other Defendants because the proposed First Amended Complaint failed to allege new facts that would cure the lack of personal jurisdiction identified in the July 16 Order. (ECF No. 47.)

On September 25, 2025, Plaintiffs filed the First Amended Complaint ("FAC"), which is the operative pleading. (ECF No. 48.) The FAC is verified by Brian Bonar, who is the Chief Executive Officer for Plaintiffs. *Id*. at 26. No exhibits are attached to the FAC.

**A. Allegations in the FAC**

Dalrada purchased Deposition Technology and another company from William Bonar and others on April 4, 2022; Dalrada purchased a third company from William Bonar and another person on March 1, 2023. *Id*. ¶¶ 8–10. William Bonar was employed by Dalrada from July 1, 2023, to August 30, 2024, and served as a director of Deposition Technology and other related companies from at least March 1, 2023, to September 30, 2024. *Id*. ¶¶ 10–12, 42.

In December 2023, William Bonar made false allegations of financial misconduct against an employee of Dalrada to the Securities and Exchange Commission, Dalrada's Board of Directors, Dalrada's auditors, and others. *Id*. ¶¶ 25–27. Since William Bonar "filed various complaints, Plaintiff's stock price has plummeted, at one point dropping from $0.17 to $0.01, which is an estimated share price loss to Plaintiffs in the amount of

approximately $7,200,000.00." *Id*. ¶ 47. In October 2024, Dalrada learned that William Bonar made disparaging remarks about Dalrada's allegedly precarious financial situation to a client of Dalrada and employees of a Dalrada subsidiary. *Id*. ¶¶ 44, 48.

"[M]onths after Defendant left the company," Dalrada learned that William Bonar had "engaged in other misdeeds [which] have caused damage to Plaintiffs," including taking a personal loan of $69,000 "from the company bank account" and leasing vehicles for personal use in 2023. *Id*. ¶¶ 54–62.

In September 2024, Dalrada learned that "numerous items are now missing from [Dalrada's] Scotland facility, including but not limited to, employment manuals, proprietary drawings, technical manuals regarding the installation, maintenance and repair of the heat pump units." *Id*. ¶ 52. "Furthermore, Defendant has failed and/or refused to turn over all of the corporate books associated with Dalrada … [and related companies] despite numerous requests having been made." *Id*. ¶ 53.

"On or about October 2, 2024, approximately one month after Defendant William [Bonar] resigned from [Plaintiffs' related companies], Defendant opened his own company in the UK with another former director and employee … called Wafer Fab Solutions, LTD." *Id*. ¶ 63. "This company's website show[s] products suspiciously similar to Plaintiffs' EVOS machines which are proprietary to Plaintiffs." *Id*. "This is in direct breach of the Employment Agreement by and between Defendant William Bonar which contains both a non-compete clause and a conflict of interest clause." *Id*. ¶ 64.

"On October 21, 2024, Plaintiffs received two notices from the HMRC, a UK tax agency, that an unpaid debt in the amount of $140,954.59 was incurred for the tax period ending March 31, 2022 which was never disclosed to Plaintiffs prior to purchasing the company." *Id*. ¶ 104; *see also id*. ¶ 103 ("[O]n or about April 2022, when Plaintiff was purchasing Defendant William [Bonar]'s UK company, Deposition Technology Ltd., he represented to Plaintiffs that he had disclosed any and all debts and liabilities for the company.").

"On or about November 1, 2024, Plaintiff inadvertently received an email regarding a meeting with William and a potential client Ian discussing Plaintiff's EVOS units. William did not have the right or title or authority to sell, encumber, transfer or enter into any agreements thereon to Plaintiff's property." *Id*. ¶ 49. "It also became known to Plaintiff that William had begun contacting Plaintiff's customers with the intent to interfere with customer relations." *Id*. ¶ 50.

On March 31, 2025, Dalrada discovered that it "was paying for without [its] knowledge … the leasing of a commercial building in Devon, UK," which "was being utilized for storage." *Id*. ¶ 62. "Plaintiffs terminated the lease upon discovery on or about March 31, 2025 at an approximate cost of $1,382.76." *Id*.

**B. Application for TRO**

On October 8, 2025, Plaintiffs filed the pending Application for TRO. (ECF No. 50.) Plaintiffs

> move[] this Court pursuant to Federal Rule of Civil Procedure 65 for a Temporary Restraining Order and, upon hearing, a Preliminary Injunction to: (1) restrain Defendant William Ian Martin Bonar, and all of his respective agents, or anyone acting on his behalf, from selling, transferring, assigning, pledging, dissipating or otherwise encumbering the approximately 10,912,301 shares of stock in Plaintiff Dalrada Financial Corporation which represent Plaintiffs only viable source of recovery; (2) interfering with Plaintiffs' customer and employee relationships; and (3) unlawfully selling Plaintiffs' EVOS machines.

*Id*. at 1–2.

With respect to the first request for relief—restraining William Bonar from selling stock—Plaintiffs assert:

> Unless restrained, Defendant's actions will cause Plaintiffs irreparable injury by depriving Plaintiff of any ability whatsoever to recoup its losses should Plaintiffs prevail on the merits of this case and are granted an award for damages. The shares of stock currently in the possession, custody and control of Defendant are the only know assets owned by Defendant which could be used to satisfy a judgement in the event Plaintiffs do, in fact, prevail in this

case. Should Defendant be permitted to sell, transfer or otherwise encumber the stock shares, it would most likely impair any remedies at law Plaintiffs have available to them.

*Id*. at 3.

With respect to the second request for relief—restraining William Bonar from contacting customers and employees—Plaintiffs assert: "Defendant's improper contact with Plaintiff's customers threatens permanent loss of business relationships that cannot be adequately remedied with damages." *Id*. at 6.

With respect to the third request for relief—restraining William Bonar from selling EVOS machines—Plaintiffs assert: "Defendant has opened a company which is similar, if not identical to Plaintiffs…. Plaintiff faces imminent irreparable harm if Defendant continues to sell EVOS machines, as this undermines Plaintiff's market position, damages goodwill, and violates Plaintiff's exclusive patent rights." *Id*. at 7.[1]

Plaintiffs state that the Application for TRO is based on "Declarations of Brian Bonar and Kyle McCollum," but no declarations have been filed. *Id*. at 2. The evidence attached to the Application for TRO consists of the following: a Stock Purchase Agreement dated April 4, 2022; notices dated October 14 and 15, 2024 from the United Kingdom tax agency; a page from a spreadsheet apparently listing patent applications made by Plaintiffs between 2020 and July 2024; and webpage printouts showing the United Kingdom registration of Wafer Fab Solutions, Ltd. and an "About Us" description apparently from Wafer Fab Solutions, Ltd.'s website.

## II. Discussion

A temporary restraining order, as with any preliminary injunctive relief, "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). When the nonmovant has been served, as here, the standard for

---

[1] "EVOS machine" is not defined in the Application for TRO or the FAC.

5

24-cv-2166-WQH-BLM

issuing a temporary restraining order is the same as that for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. 7. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted).

Under Rule 65(b) of the Federal Rules of Civil Procedure, a plaintiff seeking a temporary restraining order or a preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, a "sliding scale" standard may be used: "[a] preliminary injunction is appropriate when a plaintiff demonstrates … that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor … so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (first alteration in original) (citation omitted).

Both the traditional and the "sliding scale" standards require plaintiffs seeking a temporary restraining order to establish that they are likely to suffer irreparable harm in the absence of the requested injunction. *See id.*; *Winter*, 555 U.S. at 20–22 (rejecting an approach that permitted mere "possibility" of irreparable harm if there is a strong likelihood of success on the merits). To satisfy the "likelihood of irreparable harm" requirement, the moving party must establish (1) that it is *likely* to suffer a certain harm and (2) that the harm that it is likely to suffer qualifies as *irreparable*. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Id.* at 1251. The plaintiff bears the burden "to put forth specific evidence from which the court can infer

irreparable harm." *Adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 760 n.8 (9th Cir. 2018) (citing *Herb Reed Enters.*, 736 F.3d at 1250); *Concord Music Grp., Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131, 1138–39 (N.D. Cal. 2025) (denying preliminary injunction because plaintiffs' declarations were too general and "fail[ed] to identify any specific harm").

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). "[M]onetary injury is not normally considered irreparable." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)). However, "a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *In re Est. of Ferdinand Marcos, Hum. Rts. Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994). This type of injunction is "restricted to only *extraordinary* cases…." *Id*.

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003)). In determining whether to grant such relief, courts in the Ninth Circuit look to "evidence that defendants are in the process of dissipating assets, are strategizing to do so in the future, or have a history of past financial misconduct." *MacDonald v. Dynamic Ledger Sols., Inc.*, No. 17-cv-07095-RS, 2017 WL 6513439, at *3 (N.D. Cal. Dec. 20, 2017) (denying preliminary injunction where plaintiff failed to establish that defendants were likely to dissipate their assets); *see Conn. Gen.*, 321 F.3d at 881 (concluding that the district court did not clearly err in finding a

likelihood of dissipation given the defendants' "history of fraudulent intra-family transfers, their refusal to disclose asset information in defiance of court order and their convenient divorce settlement"); *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236–37 (9th Cir.1999) (concluding that the district court did not clearly err in finding a likelihood of dissipation "[g]iven the [defendants'] history of spiriting their commissions away to a Cook Islands trust").

In the Application for TRO, Plaintiffs focus primarily on their request to "restrain Defendant William Ian Martin Bonar, and all of his respective agents, or anyone acting on his behalf, from selling, transferring, assigning, pledging, dissipating or otherwise encumbering the approximately 10,912,301 shares of stock in Plaintiff Dalrada Financial Corporation which represent Plaintiffs only viable source of recovery." (ECF No. 50 at 1; *see also id*. at 3, 5–6, 8–9.) This request to restrain the sale of William Bonar's stock is not made in the FAC. Generally, "[t]he relationship between the preliminary injunction and the underlying complaint" must be "sufficiently strong," such as "where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id*. As discussed above, an exception to this principle is the "*extraordinary* case" of an injunction amounting to an asset freeze "due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *In re Est. of Ferdinand Marcos, Hum. Rts. Litig.*, 25 F.3d at 1480. The Application for TRO contains no evidence of William Bonar's "impending insolvency" or that he "has engaged in a pattern of secreting or dissipating assets to avoid judgment." *Id*. Even considering the allegations of the verified FAC, there are no allegations "show[ing] a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief

is not granted." *Johnson*, 572 F.3d at 1085. Accordingly, to the extent the Application for TRO requests an injunction restraining William Bonar from selling stock, it is denied.

The Application for TRO also requests an injunction "restrain[ing] Defendant William Ian Martin Bonar, and all of his respective agents, or anyone acting on his behalf, from … interfering with Plaintiffs' customer and employee relationships." (ECF No. 50 at 1–2.) "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). However, "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984)). A court's finding of "[e]vidence of loss of control over business reputation and damage to goodwill" cannot be "grounded in platitudes rather than evidence." *Herb Reed Enters.*, 736 F.3d at 1249.

The Application for TRO contains no evidence that Defendant has interfered with Plaintiffs' customer and employee relationships. The FAC alleges that, in October 2024, Plaintiffs learned that William Bonar made disparaging remarks about Dalrada's allegedly precarious financial situation to a client of Dalrada and employees of a Dalrada subsidiary.[2] (ECF No. 48 ¶¶ 44, 48.) The FAC fails to allege that Dalrada suffered any actual injury from these alleged statements by William Bonar, such as losing a customer or an employee. Even considering the allegations of the FAC, Plaintiffs' alleged injury from William Bonar's alleged disparaging remarks is too speculative to warrant preliminary injunctive relief. *See Caribbean Marine Servs. Co.*, 844 F.2d 668, 674 ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.");

---

[2] According to the FAC, Dalrada's financial situation was, in fact, precarious, as Dalrada's "stock price ha[d] plummeted, at one point dropping from $0.17 to $0.01, which is an estimated share price loss to Plaintiffs in the amount of approximately $7,200,000.00." (ECF No. 48 ¶ 47.)

*Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Assuming that in some cases lost reputation is irreparable, we must determine whether the trial court's finding is clearly erroneous that no irreparable loss was caused by the exclusivity provisions. Plaintiff has not shown that the decline in its sales is caused by the exclusive feature contracts. In its brief to this court, plaintiff pointed to only two affidavits to demonstrate injury.... Professor Isaacs did not address the particular situation in issue, and Mr. Maynard provided only conclusory statements and was an interested party."); *see also Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011) ("[T]he person or entity seeking injunctive relief must demonstrate that irreparable injury is *likely* in the absence of an injunction. An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury, or a conjectural or hypothetical injury.") (quotations omitted). To the extent the Application for TRO requests an injunction restraining William Bonar from interfering with Plaintiffs' customer and employee relationships, it is denied.

Finally, the Application for TRO requests an injunction "restrain[ing] Defendant William Ian Martin Bonar, and all of his respective agents, or anyone acting on his behalf, from … unlawfully selling Plaintiffs' EVOS machines." (ECF No. 50 at 1–2.) The Application for TRO contains no evidence that Defendant has sold any of "Plaintiffs' EVOS machines." The FAC likewise contains no allegation that Defendant has sold any of Plaintiffs' machines. The FAC alleges that in October 2024, Defendant "opened his own company" and "[t]his company's website show[s] products suspiciously similar to Plaintiffs' EVOS machines which are proprietary to Plaintiffs." (ECF No. 48 ¶¶ 63–64.) The FAC alleges that in November 2024, "Plaintiff inadvertently received an email regarding a meeting with William and a potential client Ian discussing Plaintiff's EVOS units," and "[i]t also became known to Plaintiff that William had begun contacting Plaintiff's customers with the intent to interfere with customer relations." *Id*. ¶¶ 49–50. These allegations are too speculative to warrant preliminary injunctive relief. Plaintiffs

offer no evidence that Defendant successfully sold a single unauthorized "EVOS unit" or that Defendant successfully caused even one of Plaintiffs' customers to cease doing business with Plaintiffs. *See Caribbean Marine Servs.*, 844 F.2d at 674 ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.") (citing *L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1201); *see also Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391–92 (9th Cir. 2014) ("The allegations of harm in the record are conclusory and speculative. Sunlight simply asserted to the district court that its goodwill and reputation would be irreparably harmed because TLS's Titaness products were being sold by a website that supposedly catered to marijuana growers, while Sunlight had worked hard to ensure that its products were not marketed to marijuana growers. The evidence Sunlight offered in support of this assertion did not establish that Sunlight had been or was likely to be harmed by TLS's use of the Titaness mark. It did not establish that Sunlight's customers are aware of the website, would associate the products on the site with marijuana, or would stop purchasing Sunlight products if they mistakenly believed that Sunlight was marketing to marijuana growers."). To the extent the Application for TRO requests an injunction restraining William Bonar from selling Plaintiffs' EVOS machines, it is denied.

The Court's finding that Plaintiffs failed to sustain their burden of showing irreparable injury is "supported" by "Plaintiff[s'] long delay before seeking a preliminary injunction" which "implies a lack of urgency and irreparable harm." *Oakland Trib., Inc.*, 762 F.2d at 1377 (citing, *inter alia*, *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.")). The FAC alleges that Plaintiffs learned in October 2024 of Defendant's alleged "disparaging remarks" to a client and the employees of a Dalrada subsidiary. (ECF No. 48 ¶¶ 44, 48.) The FAC alleges that Plaintiffs learned in November 2024 of Defendant's alleged "meeting with ... a potential client …

discussing Plaintiff's EVOS units," and "that William had begun contacting Plaintiff's customers with the intent to interfere with customer relations." *Id*. ¶¶ 49–50. Plaintiffs offer no explanation for why they waited almost a year to file an application for emergency injunctive relief.

The Court concludes that Plaintiffs have failed to meet their burden to demonstrate that they likely will be irreparably injured absent the requested temporary restraining order. Accordingly, Plaintiffs fail to meet either the traditional or sliding scale standard for issuing a temporary restraining order. *See Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (citations omitted); *Cottrell*, 632 F.3d at 1135 ("*Winter* tells us that plaintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction."); *Oakland Tribune*, 762 F.2d at 1376 ("Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury.  Because the [plaintiff] has not made that minimum showing we need not decide whether it is likely to succeed on the merits.") (citations omitted). Accordingly, the Application for TRO is denied.

### III.  Conclusion

IT IS HEREBY ORDERED that the Application for TRO is denied. (ECF No. 50.)

Dated:  October 10, 2025

                                      Hon. William Q. Hayes
                                      United States District Court